(Nos. 59263, 59295 cons.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. SHIRLEY MAXINE FERNETTI, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES McGINNIS, Appellant.

*Opinion filed October 19, 1984.*

F. Stewart Merdian, of Cuba, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Mark L. Rotert and David E. Bindi, Assistant Attorneys General, of Chicago, of counsel), for the People.

Walter La Von Pride, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Michael E. Shabat, Joan S. Cherry and Jeanette Sublett, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

Defendant Shirley Fernetti was charged by information with two counts of murder, one count of involuntary manslaughter, and one count of armed violence. Fol-

lowing a bench trial in the circuit court of Fulton County, she was found guilty of the offenses of involuntary manslaughter and armed violence. Since both charges were based on the same act, the trial court entered judgment only on the greater offense, armed violence. The defendant was then sentenced to the minimum term of six years. On appeal, the appellate court affirmed. 117 Ill. App. 3d 44.

Similarly, defendant James McGinnis was charged by information in Cook County with two counts of murder and one count of armed violence. After a bench trial, he was found guilty of involuntary manslaughter and armed violence based on involuntary manslaughter. The defendant's involuntary-manslaughter conviction was vacated by the court, and he was sentenced to the minimum term of six years on the armed-violence conviction. On appeal, the appellate court, by order (87 Ill. 2d R. 23), affirmed defendant's conviction and sentence (116 Ill. App. 3d 1172). Pursuant to our Rule 315(a) (87 Ill. 2d R. 315(a)), we granted leave to appeal in each case and consolidated them for the purpose of review.

The facts in each case are not in dispute and are adequately stated in the appellate court dispositions. The issues to be resolved herein pertain to law, not facts. The common questions are: (1) Is an issue raised for the first time in this court waived; and, if not, (2) may the offense of involuntary manslaughter serve as a predicate felony under the armed-violence statute (Ill. Rev. Stat. 1981, ch. 38, pars. 33A—1 through A—3)? Additionally, defendant McGinnis argues that the armed-violence statute is unconstitutional as it violates the fifth, eighth and fourteenth amendments to the Federal Constitution.

As the State correctly points out, neither defendant specifically questioned whether involuntary manslaughter could serve as a predicate felony for armed violence in either the trial or appellate court. This court has often

stated, as a general proposition of law, that issues not presented in the lower courts are waived for purposes of further review. (*People v. Myers* (1981), 85 Ill. 2d 281, 291; *People v. Williams* (1977), 66 Ill. 2d 179, 189; *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 313.) This general rule, however, is not without exception. It has long been recognized that a change in law will be given effect while a case is on direct review. (See *United States v. Schooner Peggy* (1801), 4 U.S. (1 Cranch) 103, 110, 2 L. Ed. 49, 51; *Linkletter v. Walker* (1965), 381 U.S. 618, 627, 14 L. Ed. 2d 601, 607, 85 S. Ct. 1731, 1736; *People v. McCloskey* (1971), 2 Ill. App. 3d 892, 900 (supplemental opinion on rehearing).) This rule applies where a judicial decision has intervened, as well as where a statutory change has altered the law. (See *Linkletter v. Walker* (1965), 381 U.S. 618, 626, 14 L. Ed. 2d 601, 606, 85 S. Ct. 1731, 1736.) The above-cited cases acknowledge the duty of a reviewing court to apply existing law. Yet the court cannot perform this duty if the litigants are prevented from noting such a change in their briefs due to their failure to previously raise the point.

In the case at bar, both defendants were tried and their appeals completed prior to this court's decision in *People v. Alejos* (1983), 97 Ill. 2d 502. As a result of that decision, voluntary manslaughter cannot be enhanced to a Class X felony under the armed-violence provisions of the criminal code. The defendants, who had been convicted of the Class X offense of armed violence based on the less serious offense of involuntary manslaughter, subsequently sought leave to appeal to this court. Citing *Alejos,* they argue that the legislature did not intend armed violence to be predicated on involuntary manslaughter.

Applying the above-stated principles of law, it would appear that, in the interest of fairness and substantial

justice, the defendants' argument should be addressed. We realize that our decision in *Alejos* concerned the application of the armed-violence provisions to the predicate offense of *voluntary* manslaughter. Nonetheless, for reasons to be set out later in this opinion, we believe that the change in the law occasioned by *Alejos* has bearing on these cases. To decline to address this issue, therefore, would not only lead to a serious injustice in the instant cases, but would also leave the law in a confused state. Accordingly, we hold that under the circumstances recited herein the exception to the waiver rule contained in our Rule 615(a) (87 Ill. 2d R. 615(a)) is applicable to the instant cases. We turn, therefore, to the issue presented.

The armed-violence statute provides:

> "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." Ill. Rev. Stat. 1981, ch. 38, par. 33A—2.

The State argues that the legislature intended what the plain meaning of the statute implies. Since involuntary manslaughter is a Class 3 felony, the State maintains that a charge of armed violence is properly predicated upon it. According to the State, this court implicitly agreed with the above contentions when it upheld a conviction for armed violence based upon involuntary manslaughter in *People v. Simmons* (1982), 93 Ill. 2d 94. However, the issue before the court in the instant appeal was never raised, briefed or passed upon in *Simmons*, which was decided prior to *Alejos*. Therefore, the State's conclusion that *Simmons* impliedly held that a conviction for armed violence is properly predicated on involuntary manslaughter is without merit.

The court did address the applicability of the armed-violence provisions to the offense of *voluntary* manslaughter in *Alejos*. There we held that voluntary manslaughter could not form the basis for an armed-violence

conviction because the legislature did not intend the Class X consequences of armed violence to apply to a nondeliberate act. The State does not contend that there is a distinction between voluntary and involuntary manslaughter sufficient, in these cases, to produce a result different from that reached in *Alejos*. Rather, the State submits that *Alejos* was improperly decided and should, therefore, be reconsidered.

Our holding in *Alejos* was based upon the intent of the legislature and the nature of the underlying felony. As there stated, "the armed-violence provision is intended not only to punish the criminal and protect society from him but also to deter his conduct—that of carrying the weapon while committing a felony." (*People v. Alejos* (1983), 97 Ill. 2d 502, 509.) Because of the improbability that the armed-violence provision would deter those who would commit voluntary manslaughter from using a dangerous weapon, we declined to apply the armed-violence statute literally to that felony.

In reaching this decision, we noted that a conviction for voluntary manslaughter is an acknowledgement by the trier of fact that a defendant either acted under a sudden and intense passion resulting from serious provocation (Ill. Rev. Stat. 1981, ch. 38, par. 9—2(a)), or an unreasonable but actual belief that the circumstances required the use of deadly force (Ill. Rev. Stat. 1981, ch. 38, par. 9—2(b)). In either instance, the law recognizes that one who commits voluntary manslaughter is neither as culpable as one who commits a calculated homicide, nor as likely to be deterred by the threat of punishment. Therefore, in *Alejos*, we held that the legislative purpose of the armed-violence statute would not be achieved by applying its provisions to the offense of voluntary manslaughter. After careful consideration we believe that our reasoning is still sound.

Similarly, we find that application of the armed-vio-

lence statute to the offense of *involuntary* manslaughter would not further the intent of the legislature. Involuntary manslaughter, by statute, is defined by its "unintentional" nature. (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a).) It consists of the killing of a human being without any intent to do so. (*People v. Ryan* (1956), 9 Ill. 2d 467, 475; *People v. Hunter* (1937), 365 Ill. 618, 623; *People v. Lavac* (1934), 357 Ill. 554, 558; *People v. Flanagan* (1930), 338 Ill. 353, 361.) Accordingly, it is difficult to comprehend how the armed-violence provisions of the criminal code would be able to deter an unintentional act. We therefore find that the reasoning of *Alejos* is dispositive of the case at bar and decline to apply the armed-violence provisions to the felony of *involuntary* manslaughter.

In so doing, we note the State's position that any further curtailment of the armed-violence statute should be left to the legislature. However, to refrain from acting, in the instant case, would result in a paradoxical situation wherein a lesser offense, involuntary manslaughter, would be punishable more severely than the more serious crime of voluntary manslaughter, if both were committed while armed with a dangerous weapon. Thus, simple logic dictates that if voluntary manslaughter cannot serve as a predicate offense under the provisions of the armed-violence statute, then neither can involuntary manslaughter. See *People v. Wisslead* (1983), 94 Ill. 2d 190.

Finally, having found that the armed-violence statute is not applicable to the offense of involuntary manslaughter, we need not address defendant McGinnis' remaining contentions concerning the constitutionality of such an application.

For the reasons stated above, we reverse the judgments of the appellate and circuit courts and remand each cause to the respective circuit courts with directions.

In the case of People v. Fernetti, cause No. 59263, the circuit court of Fulton County is directed to vacate its judgment entered for the offense of armed violence. It is further directed to enter judgment, based upon its original finding that defendant was guilty of involuntary manslaughter, and sentence her in accordance with the law for such offense.

In the case of People v. McGinnis, cause No. 59265, the circuit court of Cook County is directed to vacate its judgment entered for the offense of armed violence. It is further directed to reinstate its judgment of conviction for involuntary manslaughter and sentence defendant on this charge.

*Appellate court reversed; circuit courts vacated; causes remanded, with directions.*